## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JOAN C. HARRUP,

      **Plaintiff,**

v.                                       **Civil Action No. 3:15cv697**

ASHTON B. CARTER,
*Secretary, Department of Defense,*

      **Defendant.**

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Ashton B. Carter's Motion to Dismiss.[1]

(ECF No. 10.) Plaintiff Joan C. Harrup, proceeding *pro se*,[2] has responded to the Motion to

Dismiss, (ECF No. 19), and Carter has replied, (ECF No. 21). Accordingly, the matter is ripe for

disposition. The Court dispenses with oral argument because the materials before it adequately

present the facts and legal contentions, and argument would not aid the decisional process. For

the reasons that follow, the Court will grant the Motion to Dismiss.

### I.  Federal Rule of Civil Procedure 12(b)(1) Standard

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)[3] challenging the

Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting

jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va.*

---

[1] Carter provided Harrup with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). (ECF No. 12.)

[2] "District courts have a duty to construe *pro se* pleadings liberally." *Blankenship v. Am. Fed. Gov't Employees*, No. 3:15cv294, 2016 WL 1276425, at *2 (E.D. Va. Mar. 30, 2016) (citing *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

[3] "[A] party may assert the following defense[ ] by motion: (1) lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

*Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A motion to dismiss pursuant to Rule 12(b)(1) can attack subject-matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

A Rule 12(b)(1) motion may also challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See id.*; *see also Adams*, 697 F.2d at 1219.

## II.  Procedural and Factual Background

After the United States Equal Employment Opportunity Commission (the "EEOC") denied consideration of her Petition to Review a final decision of the Merit Systems Protection Board (the "MSPB"), Joan C. Harrup filed a Complaint in this Court against Ashton B. Carter,

the former Secretary of the Department of Defense. The facts underlying Harrup's claim arise from the implementation of the 2013 Federal Government Furlough, which she claims applied to her in violation of the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*[4] (Compl. 1, ECF No. 4.)

### Harrup's 2013 Challenge to the Furlough

Harrup alleges that, in February 2011, she began working a reasonable accommodation schedule to comply with her neurologist's orders following an injury sustained in a car accident. Under that schedule, Harrup contends she worked only thirty-four hours per week, with reduced hours on Tuesdays and Thursdays. The Defense Logistics Agency ("DLA"), a component of the Department of Defense, recorded the hours she did not work as Leave without Pay ("LWOP").

Anticipating an upcoming furlough, the DLA negotiated a Memorandum of Agreement ("MOA") with the American Federation of Government Employees, Council 169 ("AFGE"), a union to which Harrup belonged, regarding application of the furlough to union members. The DLA and the AFGE signed this agreement on May 1, 2013. (*See* Mem. Agreement Between the DLA and the AFGE Administrative Furlough, ECF No. 4-3.) On May 29, 2013, the DLA issued a memorandum to its affected employees informing them of a proposed furlough ("Furlough Notice"), which would be implemented "not earlier than 30 days from receipt of [the] notice." (May 29, 2013 DLA Memo. 1, ECF No. 11-1.)

In July and August 2013, due to budget constraints, the DLA furloughed many of its civilian employees, including Harrup, for six non-consecutive days. The DLA required that employees record furlough hours as LWOP and that they take the hours on Mondays or Fridays during the furlough period. Prior to the first week of the furlough, the DLA allowed employees

---

[4] The Rehabilitation Act guarantees rights to adults with disabilities and allows for reasonable accommodations.

to choose which day of the week they wanted to serve as their furlough day, but required employees to maintain that choice throughout the furlough period.

Pursuant to the MOA, "[t]hose employees who currently have an alternative work schedule with a scheduled regular day off will have the option of retaining their current day off as their weekly furlough day." (Mem. Agreement Between the DLA and the AFGE Administrative Furlough ¶ 3.) It also provided that part-time employees should work with their "supervisors . . . [to] compute a pro-rated number of furlough hours per pay period commensurate with that part-time schedule." (*Id.* ¶ 6.) Both the DLA and the AFGE "agree[d] to abide by applicable laws, rules, and regulations regarding furloughs" in implementing the upcoming furlough. (*Id.* ¶ 15.)

After receiving the Furlough Notice and in accordance with the procedures within it, Harrup sent a letter to the DLA's Deciding Official asserting that the furlough would cause her financial hardship due to pay reduction and continued medical payments, stating that it "d[id] not promote the efficiency of the service, is unwarranted, and is unprecedented." (Joan Harrup Mem. for Deciding Official ¶ 3, ECF No. 11-2.) On June 27, 2013, the Deciding Official responded on behalf of the DLA by issuing a "Notice of Decision to Furlough Due to Lack of Funds." (ECF No. 11-3.) In that notice, the DLA rejected any claim that the furlough was "unwarranted" or lacked legal support. (June 27, 2013 DLA Mem. 1–2, ECF No. 11-3.) The DLA also deemed the furlough "valid." (*Id.* at 2.) Recognizing that the furlough might "create a financial hardship for employees," the DLA stated that it had attempted to limit the impact "across-the-board for all employees," and referred Harrup to resources within DLA to assist with financial or other issues. (*Id.*) Finally, the DLA instructed Harrup that she, and other

employees, could pursue various avenues of appeal depending on the basis of their claim, or on their employee status.

### Harrup's August 2, 2013 Appeal to the MSPB

On August 2, 2013, Harrup appealed the furlough to the MSPB asserting again that the furlough did "not promote the efficiency of service, is unwarranted, and unprecedented." (MSPB Form 185-2, ECF No. 11-4.) Harrup charged that she "knew" the furlough would be deleterious to "the DLA mission." (*Id.*) She reiterated that the proposed furlough would cause her financial hardship due to pay reduction and continued medical needs.

### The November 3, 2014 Notice to Appellants

On November 3, 2014, Administrative Law Judge Nicole DeCrescenzo (the "ALJ") issued a Notice to Appellants on behalf of the MSPB. (*See* ALJ's Notice to Appellants (the "ALJ Notice"), ECF No. 11-5.) The ALJ Notice informed Harrup and approximately thirty others that their appeals had been consolidated. The ALJ notified Harrup's appeal group that she would consider at least the following four issues under their appeals: "[f]urlough was arbitrary, unfair, or inconsistent with the efficiency of the service; [f]urlough was unnecessary because agency had sufficient funds and/or the agency could have utilized other cost saving methods without furloughing employees; [f]urlough caused me financial hardship; [and, w]orking Capital Fund employees should not have been furloughed." (*Id.* at 4.)

The ALJ Notice also ordered all appellants "to file a written notice specifying the arguments or affirmative defenses [they] intend[ed] to raise" and cautioned them that "[a]ny allegations or affirmative defenses not listed above that are not specifically identified in response to this order may be deemed as waived and may not be considered further." (*Id.*) Harrup did not identify any affirmative defenses, nor did she submit anything indicating that she intended to pursue a disability discrimination claim or otherwise rely on the Rehabilitation Act. Indeed, for

roughly nineteen months between August 2013 and January 2015, the gravamen of Harrup's claims rested on concerns about efficiency, arbitrary action, lack of procedure, or lack of need to save funds. Similarly consistent were Harrup's complaints of financial hardship stemming from reduced income as she continued to incur medical bills. This focus—including the absence of specific reference to any disability claim—persisted despite at least one formal opportunity to add claims or affirmative defenses to the record.

### Proceedings before the ALJ in 2015

In the ALJ's January 12, 2015 Order and Summary of Conference Call, the ALJ noted that Harrup and several others had preserved their appeals by, among other things, participating in the agency-ordered January 8, 2015 conference call. The ALJ explained that, with one exception not applicable to Harrup, "[n]o appellant has preserved an affirmative defense." (O. & Summ. of Conference Call 1, ECF No. 11-6.) After articulating the applicable law and burdens of proof, the ALJ instructed appellants, including Harrup, that "[a]ll evidence and argument must be filed by" February 16, 2015, and that anything filed after that date "will not be accepted." (*Id.* at 7.)

Harrup submitted material in support of her claim. On January 23, 2015, she argued that the furlough was not applied to her in a "fair and even manner." (Harrup's Jan. 23, 2015 MSPB Submission 3, ECF No. 4-2.) Harrup stated that she was "denied due process in not being allowed to continue" her reduced hours on Tuesday and Thursday, which complied with a "Reasonable Accommodation Request from [her] neurologist." (*Id.*) Because the furlough allowed only a Monday or Friday off, Harrup stated that she had to take medical leave in order to maintain her medical treatment as directed. (*Id.*) Personal financial hardship ensued. (*Id.*) While Harrup mentioned a Rehabilitation Act term of art by referencing her earlier, agreed-upon

accommodation, she did not allege that she was being discriminated against *based on* her disability in the January 23, 2015 filing.

Harrup timely preserved her right to a hearing. (*See* Jan. 26, 2015 O. & Summ. of Prehearing Conference 1, ECF No. 11-7). On January 26, 2015, the ALJ issued an Order and Summary of Prehearing Conference. (*Id.*) In that order, the ALJ summarized the issue to be addressed as to Harrup and others: "whether the agency can prove, by a preponderance of the evidence, the factual basis for the furlough, that the furlough promoted the efficiency of the service, and that it provided the appellants with due process."[5] (*Id.* at 2.) The ALJ also instructed the parties that if they believed the summary to be incorrect, they must notify the court "no later than 4:00 pm on January 30, 2015." (*Id.* at 5.)

On January 30, 2015, Harrup submitted a new pleading regarding her opposition to the furlough. (Harrup's January 30, 2015 MSPB Submission 3, ECF No. 4-3.) Harrup contended that "DLA Aviation failed to implement [her] furlough [in accordance with] their higher headquarters guidance" when they required her to be furloughed on "a day inconsistent with [her] regular reasonable accommodation schedule." (*Id.*) In support of this claim, Harrup cited Paragraph Three of the MOA,[6] which allowed employees with a regular day off to retain that day off as their weekly furlough day. She also cited Paragraph Six of the MOA,[7] which allowed

---

[5] The ALJ also indicated she would consider a different issue raised by two of Harrup's consolidated appellees. This procedural argument did not affect Harrup's claim.

[6] Paragraph Three of the MOA states, in relevant part: "Those employees who currently have an alternative work schedule with a scheduled regular day off will have the option of retaining their current day off as their weekly furlough day. For furlough days that fall on a holiday, the next business day will serve as a furlough day." (Mem. Agreement Between the DLA and the AFGE Administrative Furlough ¶ 3.)

[7] Paragraph Six of the MOA states: "Supervisors will work with part-time employees to define a set schedule for duration of the furlough period. Based on this established schedule, supervisors will compute a pro-rated number of furlough hours per pay period commensurate

supervisors to "work with" part-time employees to devise a pro-rated furlough hourly requirement. Again, Harrup noted the negative financial consequences of being furloughed on a Monday while also still having to take part of Tuesday and Thursday off for medical reasons. In making this argument, however, Harrup never claimed discrimination *because of* her disability. Instead, Harrup turned to the MOA itself for relief from what she characterized as the failure of the DLA to implement their "higher headquarters guidance," which Harrup claimed caused her "great hardship." (Harrup's Jan. 23, 2015 MSPB Submission 3.)

### The February 18, 2015 ALJ Initial Decision

On February 18, 2015, on behalf of the MSPB, the ALJ issued an Initial Decision regarding seven appellants remaining in the consolidated appeal. (ALJ Initial Decision, ECF No. 11-8.) Harrup was the only appellant who did not waive participation in the February 2, 2015 hearing. The ALJ affirmed the DLA's action by finding that the DLA had proved, by a preponderance of the evidence, that the furloughs "promoted the efficiency of the service" and that the DLA provided due process when effectuating the furlough. (*Id.* at 10–11.)

As to Harrup, the ALJ determined that—for the first time and just before the hearing—Harrup raised an affirmative defense of "harmful procedural error" when contending that her furlough violated two provisions of the MOA. (*Id.* at 10–11.) The ALJ concluded that Harrup failed to satisfy the burden of proof with regard to her affirmative defense because her own testimony established that, as to Paragraph Three, which permitted employees to retain their current day off as their weekly furlough day, "she [did] not have a scheduled regular day off" and, as to Paragraph Six, which stated that supervisors would work with part-time employees to set their work schedule, "she [was] a full-time employee." (*Id.* at 12.) Therefore, the ALJ

---

with the part-time schedule." (Mem. Agreement Between the DLA and the AFGE Administrative Furlough ¶ 6.)

decided that Harrup did not prove, by a preponderance of the evidence, that the furlough

provisions requiring special treatment of those whose work schedules included a regular day off,

and those who worked part-time, applied to her. The ALJ concluded that the DLA applied the

furlough to her appropriately.

### Harrup's Appeal to the Full MSPB

On March 25, 2015, Harrup appealed to the full MSPB. (*See* Pet. for Review, ECF

No. 4-4.) In her Petition for Review—nineteen months into her furlough challenge—Harrup

identified, for the first time, the Rehabilitation Act as the law that should be applied to her case.

In the Petition for Review, Harrup also alleged that the initial decision was wrong because

> [t]he manner in which the Agency imposed the furlough across the board failed to
> consider and, consequently, violated the Reasonable Accommodation that had
> previously been granted to me pursuant to which I was entitled to two hours of
> leave without pay on Tuesday mornings and 4 hours of leave without pay on
> Thursday mornings for cognitive recovery time. The Agency's insistence that the
> furlough be fully imposed on Monday or Friday made it impossible for me to take
> those hours off and still accomplish my work requirements, fulfill my financial
> responsibilities, and maintain my therapy schedule due to the fact that I had to
> take 8 hours off every Mon.

(Pet. for Review 5.)

In her "response" to the DLA's response to her Petition for Review, Harrup conceded

that she did not have a regularly scheduled day off and that she was not a part-time employee.

(*See* Appellant Response to Agency Response to Appellant Pet. for Review 4, ECF No. 4-6.)

She also conceded that she was not "prevented from taking additional LWOP, sick, or annual

leave during the six week furlough period." (*Id.* at 5.) She argued, however, that "[t]he question

remains whether the Agency supported reasonable accommodation. I attest that in implementing

the furlough in my situation they did not." (*Id.*)

9

### The MSPB's Final Decision

On June 8, 2015, the full board of the MSPB issued a Final Order in which it affirmed the ALJ's decision to uphold the furlough and deny Harrup's affirmative defense of harmful procedural error. (MSPB Final Order, ECF No. 11-9.) It found that Harrup "failed to raise an affirmative defense of disability discrimination in the proceedings below" and "that she cannot raise such a claim for the first time on review." (*Id.* at 5.) Further, the MSPB pointed out that "[t]he record reflects that [Harrup] did not raise her disability discrimination allegations in her initial appeal,[8] and that she did not do so in response to the administrative judge's affirmative defenses order." (*Id.*) Finally, it found that the new documentation Harrup provided with her Petition for Review "was available to her and it does not justify accepting a new claim of disability discrimination for the first time on review." (*Id.*)

### Harrup's EEOC Complaint

On July 7, 2015, in response to the MSPB's Final Order, Harrup filed a complaint with the EEOC. (Notice of Appeal/Petition to the EEOC, ECF No. 11-10.) On October 15, 2015, the EEOC denied consideration of Harrup's complaint "[b]ecause the MSPB did not address any matters within the Commission's purview." (EEOC Denial of Consideration 2, ECF No. 11-11). The EEOC identified that the MSPB did not reach a final decision on Harrup's disability discrimination claim "because she raised it for the first time in her petition to the Full Board." (*Id.*) Therefore, the EEOC concluded that it lacked jurisdiction over Harrup's complaint. (*Id.*) On May 16, 2016, Harrup filed this action.

---

[8] Harrup first appealed the furlough to the MSPB on August 2, 2013. She raised her disability discrimination allegations for the first time on March 25, 2015.

### III. Analysis

Carter seeks dismissal of Harrup's action on either of two grounds: (1) lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); or, alternatively, (2) failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[9] Of course, if the Court lacks subject-matter jurisdiction over the alleged claims, Carter's alternative basis for dismissal becomes moot. *Harrison v. U.S. Soc. Sec. Admin.*, No. 3:13cv435, 2014 WL 29042, at *1 (E.D. Va. Jan. 2, 2014). Accordingly, the Court begins by addressing Carter's motion as it pertains to subject-matter jurisdiction. Because Harrup has failed to exhaust her administrative remedies with regard to her disability discrimination claim, the Court will dismiss her Complaint.

### A. The Rehabilitation Act Requires Federal Employees to Exhaust All Administrative Remedies Prior to Filing with the District Court

Although the ALJ, through the MSPB Notice, provided Harrup with ample opportunity to raise her Rehabilitation Act claim prior to her Petition for Review to the full MSPB, Harrup failed to do so. As a result, the ALJ had no disability claim to evaluate. The full MSPB, in turn, could not make a finding on the Rehabilitation Act claim. Therefore, Harrup failed to exhaust her administrative remedies. *See Lucas v. Henrico Cty. Sch. Bd.*, 822 F. Supp. 2d 589, 604 n.13 (E.D. Va. 2011) ("Because '[t]he remedies, procedures, and rights . . . [of Title VII] of the Civil

---

[9] "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Rights Act of 1964 . . . shall be available, with respect to any complaint' brought under Section 501 [of the Rehabilitation Act], [29 U.S.C.] § 794a(a)(1), the Title VII exhaustion requirement applies to federal employees bringing claims under the Rehabilitation Act." (quoting *Wilkinson v. Rumsfeld*, 100 F. App'x 155, 157 (4th Cir. 2004)). Thus, the Court lacks subject-matter jurisdiction over Harrup's Complaint and must grant the Motion to Dismiss under Rule 12(b)(1).

"Federal employees . . . who seek to enforce their rights under . . . the Rehabilitation Act must exhaust their available administrative remedies before pursuing an action in federal court." *Melendez v. Sebelius*, 611 Fed. App'x 762, 763 (4th Cir. 2015). If a federal employee does not exhaust all administrative remedies prior to filing a case in federal court, it deprives the court of subject matter jurisdiction. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009).

In administrative proceedings below, Harrup contended that the DLA did not apply its furlough to her in a "fair and even manner." (Harrup's Jan. 23, 2015 MSPB Submission 3.) Harrup argued that she was "denied due process in not being allowed to continue" her schedule of reduced hours on Tuesday and Thursday—a schedule that complied with an earlier reasonable accommodation—because that schedule could not be reconciled with the MOA. This due process claim did not rest on disability discrimination. Although Harrup's January 2015 claim mentioned a "reasonable accommodation" as the basis for her work schedule, the need for accommodation did not drive her claim. (*See id.* (citing reduced hours caused by the staggered schedule to demonstrate the DLA's violation of the MOA); Harrup's January 30, 2015 MSPB Submission 3 (same).) Even through her January 30, 2015 claim—added at the invitation of the ALJ—Harrup did not rely on the Rehabilitation Act or disability discrimination to oppose the furlough, much less with clarity or specificity.[10]

_____

[10] As the Court will explain below, courts require that claimants raise issues before administrative tribunals with "sufficient specificity and clarity" so as to make the administrative

In fact, Harrup did not explicitly identify the Rehabilitation Act as the law governing her claim until she filed her March 25, 2015 Petition for Review—approximately nineteen months after she first appealed the furlough to the MSPB on August 2, 2013. For that reason, Harrup improperly failed to give the ALJ the first shot at consideration.

As a result, in its June 8, 2015 Final Order, the full MSPB refused to consider Harrup's new discrimination claim because it found that she "did not raise her disability discrimination allegations in her initial appeal, and that she did not do so in response to the administrative judge's affirmative defenses order." (MSPB Final O. 5.) "[T]he [Merit Systems Protection] Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence." *Ronso v. Dep't of Navy,* 122 M.S.P.R. 391, 393 n.1 (M.S.P. Apr. 14, 2015). The MSPB further found that the information that Harrup submitted in support of her disability discrimination claim "was available to her and . . . [did] not justify accepting a new claim of disability discrimination for the first time on review." (*Id.*) Therefore, the MSPB declined to make a finding on this new charge. (*Id.*)

The EEOC can consider the final decision of the MSPB on a mixed-case appeal[11] within 30 days after that decision becomes final. 5 U.S.C. § 7702(b)(1); 29 C.F.R. §§ 1614.303(a),(c).

---

judge "aware that [he or she] must decide the issue." *Wallace v. Department of the Air Force,* 879 F.2d 829, 832 (Fed. Cir. 1989).

[11] Although the Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals of MSPB decisions concerning claims of adverse personnel actions, "[a]n exception . . . exists for appeals to the MSPB that involve discrimination claims in addition to a qualifying adverse personnel action." *Wade v. McDonald,* No. 7:13cv394, 2014 WL 4667253, at *4 (W.D. Va. Sept. 18, 2014). These cases are referred to as "mixed-case appeals."

Although Harrup complied with the 30-day requirement of the statute,[12] the MSPB did not decide the discrimination claim Harrup raised improperly. Thus, the EEOC lacked jurisdiction over her claim, 29 C.F.R. § 1614.303(a), and denied consideration of her appeal.

After the EEOC denies consideration of an MSPB appeal, the MSPB's decision becomes judicially reviewable. 5 U.S.C. § 7702(a)(3)(B). In this case, however, no MSPB decision exists for this Court to review. Rather, the MSPB refused to make a decision regarding Harrup's disability discrimination claim because it found that she did not properly raise the claim. Therefore, Harrup failed to exhaust her administrative remedies, and this Court lacks jurisdiction to consider her disability discrimination claim. *See Jones,* 551 F.3d at 301.

### B. The Administrative Law Judge Did Not Err in Failing to Decide the Disability Discrimination

Because Harrup did not identify the Rehabilitation Act as the law governing her administrative filings and did not raise disability discrimination before filing her Petition for Review to the full MSPB, the ALJ did not commit an error of law in failing to decide Harrup's disability discrimination claim.

Harrup asserts that the ALJ committed an error of law by "rejecting the evidentiary value of the MOA which was before her." (Pl.'s Resp. to Def.'s Mot. Dismiss 2, ECF No. 19.) Harrup finds support for this claim in the fact that the MOA includes a provision stating that all parties "agree to abide by applicable laws, rules, and regulations regarding furloughs." (*Id.* (quoting Mem. Agreement Between the DLA and the AFGE Administrative Furlough ¶ 15).) As Carter points out, the record belies any contention that Harrup argued to the ALJ that the implementation of the furlough constituted disability discrimination or violated the Rehabilitation Act.

---

[12] The MSPB's Final Order was issued on June 8, 2015. Harrup filed her Notice of Appeal/Petition with the EEOC on July 7, 2015.

In *Wallace v. Department of the Air Force,* the United States Court of Appeals for the Federal Circuit found that where the employee did not raise a vagueness issue until her Petition for Review to the full MSPB, the issue was not properly before the court. 879 F.2d 829, 832, 837 (Fed. Cir. 1989). The court noted that an "issue must be raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue, and in sufficient time that the agency can do so." *Id.* at 832. In this case, Harrup did not raise the disability discrimination with enough specificity or clarity that the ALJ knew that she must decide it.[13] The ALJ, consequently, never addressed disability discrimination in her Initial Order. Following no objection by Harrup, the ALJ upheld the furlough as applied to the appellants, found that the agency provided the appellants with due process, and concluded that Harrup failed to satisfy the affirmative defense of harmful procedural error. Additionally, both the full MSPB and the EEOC denied consideration of Harrup's disability claim because Harrup failed to raise it properly before the ALJ, and Harrup's failure prevented the ALJ from deciding the issue.

Moreover, on at least three occasions, the ALJ instructed appellants, including Harrup, that if they wanted to raise any additional issues, they must do so within a specified period and in a certain way. On each occasion, Harrup failed to respond by clearly and specifically adding her disability discrimination claim. First, in the Notice to Appellants, the ALJ identified four issues raised by the appellants in the consolidated appeal and ordered appellants "to file a written notice specifying the arguments or affirmative defenses" outside of those issues. (MSPB Notice to Appellants 4.) The ALJ also warned appellants that if they failed to do so, any additional arguments "may be deemed as waived and may not be considered further." (*Id.*)

---

[13] As discussed previously, Harrup's claim referenced a "reasonable accommodation" as the factual predicate for her unusual work schedule. Especially given her concentrated pursuit of different claims, Harrup's passing reference to an "accommodation" does not establish that she intended to pursue, or did seek, a claim under the Rehabilitation Act or for disability discrimination.

Second, in the January 12, 2015 Order and Summary of Conference Call, the ALJ set forth the applicable law and burdens of proof, discussing only "whether the agency can prove, by a preponderance of the evidence, that it properly furloughed the appellants in this appeal." (O. & Summ. of Conference Call 3.) It also asserted that "[n]o appellant preserved an affirmative defense." (*Id.* at 7.) The ALJ then instructed appellants that "[a]ll evidence and argument must be filed by" February 16, 2015, and that anything filed after that date "will not be accepted." (*Id.*) Finally, two weeks later, on January 26, 2015, the ALJ issued an Order and Summary of Prehearing Conference in which she identified the issues to be decided in the case and instructed the parties that if they believed the summary to be incorrect they must notify the court "no later than 4:00 pm on January 30, 2015." (O. & Summ. of Prehearing Conference 5.)

The record contains no evidence that Harrup responded to these instructions and raised her disability discrimination claim prior to the administrative hearing. Rather, even in her Response to Carter's Motion to Dismiss here, Harrup reverts to her longstanding complaint about the furlough when arguing that the "Judge committed an error of law by rejecting the evidentiary value of the MOA which was before her." (Pl.'s Resp. to Def.'s Mot. Dismiss 2.) Because Harrup presented no evidence to the ALJ giving notice that the ALJ should decide any disability discrimination issue, and because Harrup did not assert affirmative defenses, submit evidence, or posit arguments *based on* a disability claim, the ALJ did not commit an error of law in failing to apply the Rehabilitation Act to Harrup's case.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss. (ECF No. 10.) The Court will dismiss the Complaint, with prejudice, for lack of subject-matter jurisdiction. (ECF No. 4.) Because amendment would be futile, the Court will not grant leave to amend the Complaint. *See Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F. App'x 820, 824 (4th Cir. 2010)

("Her delay therefore deprived the district court of subject-matter jurisdiction over this claim and any amendment of that claim would have been futile."); *see also Bahta v. Renaissance Hotel Operating Co.*, No. 1:15cv89, 2016 WL 356034, at *5 & n.1 (E.D. Va. Jan. 27, 2016) (denying leave to amend on grounds of futility because "failure by the plaintiff to exhaust administrative remedies . . . deprives the federal courts of subject matter jurisdiction over the claim").

An appropriate order will accompany this Memorandum Opinion.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: June 16, 2017